The next case this morning is 524-0525, People v. Hernandez. Arguing for the appellant is Jack Axelrude. Arguing for the appellee is Louis Hizzo. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning. Good morning, your honor. I know that our clerk has informed you, I believe, off the record, but just for the record, Justice Welch is also on this panel. He's unavailable today, and so he'll be reviewing the audio recording of this argument and participating in our deliberations at a later time. So with that, Mr. Axelrude, if you're prepared, you may begin. Jack Axelrude Thank you, your honor. And may it please the court, counsel. Again, my name is Jack Axelrude, and I'm here on behalf of Mr. Elias Hernandez. In his briefs, Mr. Hernandez raised two issues, both based on the fact that he was suffering from severe mental illness prior to pleading guilty. In particular, he suffers from schizophrenia, which he has suffered from since childhood, and for which he was not receiving any treatment or medication for until after the latest incident. Mr. Hernandez was suffering to a degree that should have made it clear to trial counsel that a fitness evaluation was required prior to pleading when sentencing him for the incident that occurred while he was incarcerated. So getting right into the first issue, which was that trial counsel was ineffective for failing to order a fitness evaluation despite learning of Mr. Hernandez's untreated schizophrenia and subsequent hallucinations prior to the guilty pleas. Failure to investigate a defendant's mental illness and to seek a competency hearing constitutes ineffective assistance of counsel when counsel is put on notice of facts suggesting a bona fide doubt of a defendant's fitness. Here, there was a bona fide doubt of Mr. Hernandez's fitness. The evidence presented with the amended motions, all of which could have been accessed by trial counsel prior to the pleas, demonstrated that Mr. Hernandez was suffering from schizophrenia with visual and auditory hallucinations, and that counsel was made aware of these problems directly from Mr. Hernandez prior to him entering the guilty pleas. Mr. Hernandez finally started receiving medications in jail after the latest incident. However, it wasn't until he pled guilty, was sentenced, and got to the Department of Corrections that he was able to find the right medications and start a consistent treatment plan with a mental health professional. It wasn't until the hearings on the motions to withdraw and reconsider from April 4th of 2024 that he said he was no longer and just needed someone to recognize that he was telling the truth and needed help. Trial counsel failed to recognize this, and it was unfair to Mr. Hernandez to be forced to make such important decisions while going through such a severe mental illness episode. This is just like the situation from the case Mr. Hernandez cited to, Brown v. Stearns, where the court found that counsel was ineffective for failing to sufficiently investigate defendant's mental illness or request a competency hearing, despite having knowledge of defendant's diagnosis of chronic schizophrenia that caused him to have hallucinations. Just like we have here, trial counsel's failure to request a fitness evaluation was objectively unreasonable, given Mr. Hernandez's schizophrenia diagnosis and his credible testimony that he had told trial counsel he was suffering from hallucinations as a result of his schizophrenia. Importantly, trial counsel did not deny that Mr. Hernandez had told them about the hallucinations, only that he did not recall these conversations. However, we have Mr. Hernandez's own words to rely on. Regarding his mental state at the time of agreeing to the guilty pleas, Mr. Hernandez said that he was hearing things and seeing things, and then the things that he was seeing and hearing were basically telling him to just go along with it and just act normal. Schizophrenia is a serious and one that doesn't just go away, especially without any form of treatment or medication. And here, where the undisputed facts demonstrate that Mr. Hernandez was suffering from this illness and having these hallucinations, there was a bona fide doubt of his fitness. Therefore, this court should reverse the order of denial on the amended motion, vacate the guilty pleas and admission to probation revocation, and remanage the trial court for a fitness evaluation to ensure Mr. Hernandez is now fit enough to make such an important decision on his own. If there are no questions on the first issue, I will move on to the second, which was that the trial court abused its discretion by finding that Mr. Hernandez's mental illness should not be considered as a factor in mitigation during sentencing for the latest incident. Excuse me. The Illinois legislature and courts have recognized that a defendant's mental health lower sentence. The Illinois legislature recently passed a statute that specifically requires a sentencing court to consider the defendant's mental health as a mitigating factor if, at the time of the offense, the defendant was suffering from a serious mental illness which, though insufficient to establish the defense of insanity, substantially affected his ability to understand the nature of his acts or to conform his conduct to the requirements of the law. Mr. Hernandez introduced exhibits, including affidavits from him and his father, establishing that he was diagnosed with schizophrenia as a child and that he began suffering significantly from this illness again when he became incarcerated in November of 2020. Looking at Mr. Hernandez's actions, comments, and demeanors from the incident itself, which occurred on November 9th of 2020, soon after he was incarcerated, it was clear that he was already suffering from his mental illness to a severe degree. The incident itself started because he was suffering so severely that he was asking for help to speak with a professional to get some treatment, and then his conduct, once help arrived, showed that he was unable to understand the nature of his actions. He was unable to remain calm and accept the help when a nurse showed up, but instead acted in a way that can really only be explained by his serious mental illness. The escalation and confusion that followed, leading to Mr. Hernandez getting hit with a taser, was an unfortunate display of Mr. Hernandez's mental illness, making him unable to conform his conduct to the requirements of the law at the expense of his own well-being. It is important to reiterate that after the incident, Mr. Hernandez finally started receiving medications and eventually found the right combination of medications and consistent treatment in the DOC. Finally getting the treatment he has needed and been asking for, Mr. Hernandez was able to return to the right state of mind. Again, at the hearing from April 4th of 2024, he stated that he was no longer experiencing these hallucinations and he was feeling better. His irrational behavior leading up to and during the incident, especially viewed in light of his improved mental health as a result of proper treatment down the road, illustrates the truth, that he was indeed suffering from a serious, untreated mental illness, which substantially affected his ability to understand the nature of his actions or conform his conduct to the requirements of the law. The trial court therefore erred in denying his amended motion to reconsider his sentence, and this court should either reduce his sentence for the latest incident or remand for resentencing where his mental illness can be adequately considered in mitigation. If there are no questions... What sentence are you asking for? I'm sorry, what did you say? What sentence are you asking for? Well, we're specifically asking for the sentence from the latest instance from 345. He was sentenced to 10 years. Because of his other sentences, he is already serving 10 years at 50% for the earliest incident. So if you reduced his sentence from the latest incident from 10 years to five years because of some running concurrent and some running consecutive, I think that would be a fair where all three of these incidents would be disposed of at the same time. He would serve a sentence for all three of them at the same time. So reducing it from 10 to five years would be ideal. So I will just reiterate that Mr. Hernandez deserved a fitness evaluation prior to pleading guilty where his untreated schizophrenia was impairing his ability to think or act on his own, and the severe mental illness should have been a mitigation for the latest incident where his struggles directly led to and caused the incident. Thank you. Thank you, counsel. Thank you. No further questions, Justice Moore? No questions. Okay. Mr. Hizzo, are you ready? Mr. Axelrod, you'll have time in rebuttal. Mr. Hizzo? I am. Thank you, Your Honor. Chief Justice and may it please the court. My name is Louis Hizzo and I represent the state appellee on the matter. So the defendant challenges the trial court's ruling denying his motion to withdraw his guilty plea as well as the motion to reconsider his sentence. In addressing his first contention, this court should affirm the lower court's ruling denying his motion to withdraw a guilty plea because the defendant did not receive ineffective assistance of counsel during his plea. The defendant mainly argues that counsel provided ineffective assistance of counsel because he failed to request a fitness evaluation and asserts that if he had done so, a fitness evaluation would have demonstrated a reasonable probability that he was unfit to enter a plea. As this court is well aware, the Strickland standard applies here when judging a claim of ineffective assistance of counsel. And that standard is that a defendant has the burden of here establishing that counsel's performance fell below the objective standard of reasonableness. And even if that did occur, the defendant then has to establish that counsel made unreasonable errors that adversely affected his defense. In this context of guilty pleas, as this court has seen before, a defendant has to establish that counsel's performance was objectively unreasonable under the prevailing norms and there's a reasonable probability that but for the unprofessional errors, the results would have been different. And specifically in order to establish prejudice where the defendant is alleging that counsel is ineffective for failing to request a fitness eval, the defendant has to show that the fitness eval, if it would have been requested and granted, he would have been found unfit to stand trial. A principle that has been established in this district's People v. Hayden in 2003. Here the defendant's assertions can be completely displaced by the record before this court as the defendant's attorney testified before the lower court regarding the defendant's mental health. The defendant's attorney, Mr. Vaughn, provided a testimony establishing that after the defendant informed him of his mental health issues, Mr. Vaughn then proceeded to investigate into it and he learned that yes, the defendant had previously seen a provider regarding his mental health issues, but that it occurred when he was a child and that the defendant had not returned for any follow-up treatment since. Furthermore, that facility had no medical records to share about the defendant. So Mr. Vaughn then also testified that he could not recall the defendant ever complaining about audio or visual hallucinations. However, it is important regarding Mr. Vaughn's testimony when you consider his interactions and conversations with the defendant as it related to the lack of bona fide doubt to his fitness. Mr. Vaughn testified that he could recall his conversations with the defendant and that they were appropriate. He recalled the defendant's assistance in his defense to be suitable and that's found on the record on page 395 through 396. It highlights just all of the interactions and details that he had when speaking with the defendant. And in fact, there is a point where Mr. Vaughn characterizes his defendant's communications as lucid in terms of the versions of the different occurrences of all the different charges. Mr. Vaughn's testimony established that there was no fitness issue with Merritt worthy of being brought before the court's attention and that his perception as his attorney at the time is important because it sheds light into the defendant's allegations here. And the lower court's decision in denying the motion to withdraw his guilty plea completely rested on that evidence presented during the hearing. This ruling should be given the utmost deference because the court was able to balance all the testimony before and give the appropriate credibility as well as to the issues with, you know, in the case law from Strickland establishing the deference that counsels are given when, you know, the issues are associated with trial strategy and things that counsel is specifically privy to. In addition, this court should also consider the Illinois Supreme Court's decision under People v. Mitchell, a 2000 decision cited within our brief for the proposition that due process does not automatically require that everyone taking psychotropic medications be granted a fitness hearing. So although the defendant did testify that he started taking certain medications while in custody, Mitchell establishes that the defendant was not automatically required to undergo a fitness evaluation. And this supports the notion that defendant's fitness to plead, stand trial, or be sentenced is always presumed. And such a presumption can be rebutted if it's because of the defendant's mental health or physical condition, he is so unable to understand the nature and the purpose of the proceedings against him or assist in his defense. So fitness speaks to a person's ability to function within the context of the trial. And here, not only were the defendant's responses so appropriate and coherent, that fitness was not an issue before the judge conducting the plea hearing, but Mr. Vaughn's testimony in conjunction with that suggested and supported that defendant was fit during that hearing. So the state maintains that defense counsel's performance did not fall below the objective standard of reasonableness because counsel was under an obligation to raise a meritless request for a fitness eval. Counsel's decision and testimony indicating his assessments should be given great deference here, and this court should hold that the defendant cannot establish a claim supporting that counsel committed error in his representation. So we ask this court to affirm the lower court's ruling in denying his motion to withdraw guiltily. As to the second claim, I'll briefly just highlight that. The second claim denying the motion's, defendant's motion to reconsider sentence, the lower court did not abuse its discretion. The defendant argues that trial court erred because it incorrectly considered his mental illness, or it did not, in mitigation. And he asserts that the evidence presented during the hearing on his motion demonstrated that he was likely suffering from a mental illness at the time of the offense. To this point, the state would rest entirely on the standard review providing for the trial court's great deference in sentencing a defendant absent an abuse of discretion. And there is a strong presumption that a trial court bases its sentencing determinations on reasoning, as it did here when the lower court correctly noted during the hearing that the defendant's argument centers on 730 ILCS 505-5-3.1A16, which states in pertinent part that one mitigating factor to consider is whether the defendant is suffering from a serious mental illness that substantially affected his ability to understand the nature of his actions or conform to the law. The trial court explicitly referenced the statute and found that based on the evidence presented, this factor is irrelevant because it found that the defendant's mental illness did not substantially affect his ability to conform his conduct. And although the court did sympathize with the defendant's mental health issues, it should be noted that one, the court's ruling was entirely based on the evidence presented, and two, the defendant's evidence focused only on his mental health around the time that he pled guilty, meaning that despite the defendant's assertions here, he presented no evidence supporting his mental health issues played any role at the time of any of the offenses. To this point, the defendant did present evidence that he was diagnosed with schizophrenia at a young age. However, by the defendant's own testimony, he began having issues after he was taken into custody. And in that portion of the testimony, the defendant specifically noted that he began having breathing issues, visual and auditory hallucinations, as well as panic attacks. So the defendant here is asking for the court to draw inferences that the lower court did not to connect his mental health issues with or his mental health history with his lack of conformity at the time that he was charged with certain offenses. But there's no direct evidence here that was presented for the lower court to have drawn that inference. And again, on appeal, the defendant is asking for us to draw that inference here as well. And by the defendant's own testimony provided, that he was not on any medication when he was taken into custody on November of 2020. That's, I think that's important to note, because it shows that at the time, either the defendant was neglecting to follow up with his treatment, or he was in suffering episode that would have, you know, played a role in what was going on. And so we asked this court to affirm the lower court's ruling, again, affirming his convictions, and, you know, essentially, finding that the lower court did not abuses its discretion. And again, to from that sentence. Thank you. All right. Just more any questions? No questions. All right. Thank you, Mr. Thank you very much for your brief and your argument. Mr. You have time and rebuttal. Thank you. I will just first address address the arguments on the first issue. Specifically looking at trial counsel's opinion as to whether he was fit enough, you know, fed enough to plead guilty. I think trial counsel's opinion is useful. But we as attorneys, we're not trained to determine fitness, you know, that's something that is left up to doctors. That's why we have these fitness evaluations. And here where the record is undisputed that he did have schizophrenia since childhood, and he has had these hallucinations. And then the record also shows that he was telling essentially anyone he could talk to about his ongoing issues. I think we should believe his testimony that he had told trial counsel that he was having these hallucinations as a result of his schizophrenia prior to pleading guilty. And that's why a fitness evaluation here would. Sorry. That's why a fitness evaluation here would have been so important for us to actually be able to tell beyond just the attorney's opinion. Regarding the Regarding Mr. Hernandez's answers in court, again, I want to point to his testimony where he described his hallucinations as, as instructing him to just go along with the proceeding to this act, we've asked to just go along with everything. Which again, if we had a fitness evaluation, we would be able to determine to what extent that was impairing his ability to make these decisions. Regarding the second issue, the child court did abuse its discretion. This is a fairly recent statute, one that hasn't been incorporated and utilized by justices for very long. It's important to look at the incident itself. It's important to look at the way he was acting, the fact that he was unmedicated, even though he had a severe mental illness. And of course, there are many reasons why people are not receiving treatment. A lot of it financial, a lot of it just, it's hard to get that kind of care when you need it. But it should not be held against him that he was not receiving medication before. If anything, it should further illustrate why when he did get incarcerated, it's reasonable that his mental illness was exasperated. And then looking at the incident, it's clear he didn't really have control over his actions. I don't think anybody wants to get tased. And if you're incarcerated and you're acting this way, you know that's something that can happen. It's clear that he wasn't acting, he wasn't in the right state of mind based on the incident, what he was happening. And then the testimony that he had been suffering with this leading up to it, he began having extreme hallucinations after he was incarcerated. And then of course, 345 happened after he was incarcerated, happened while he was incarcerated. So I think looking at the statute where it says it has to be a severe, a serious mental illness, schizophrenia, which was insufficient for the events of insanity, but it did substantially affect his ability to understand the nature of his acts as he was asking for help. And when help came, he still couldn't control his actions. And then obviously when it escalated, it showed he couldn't conform his conduct to the requirements of the law. So for these reasons, we believe that he should have either got a fitness evaluation, should be remanded to make sure that he is now fit, thanks to these medications, now to the treatments that he's been receiving in a DOC, to now that he's able to make this decision on his own without the possibility of a hallucination being a focal point in his decision making. And it should also be considered for mitigation for the latest incident where it's clear that his mental illness struggles were what started and escalated the situation. Thank you. Thank you, Justice Moore. Any questions? No questions. All right. Thank you both for your arguments today and your briefs. We'll consult with Justice Welch at a later time and deliberate this matter. Our ruling will issue in due course. You guys have a good rest of your day. Thank you.